**Christine R. MIDDLETON/DPW, Appellee,**

v.

**Robert D. ROBINSON, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 16, 1998.
Filed April 6, 1999.

---

John G. Bergdoll, III, York, for appellant.

Before POPOVICH, SCHILLER and OLSZEWSKI, JJ.

POPOVICH, J.:

¶1 Appellant Robert D. Robertson appeals from the order entered by the York County Court of Common Pleas, which retroactively awarded child support in the total amount of $27,767.21 and required appellant to pay fees for paternity tests in the amount of $449.00. We affirm.

¶2 The record indicates that Christine R. Middleton is the mother of three children born out of wedlock. One of the children, Armed, was born on March 22, 1974. In October of 1975, Middleton began to receive cash assistance for herself and her son from the Department of Public Welfare (the "department"). The cash grant for the family unit increased with the birth of her daughter, Lakisha Middleton, on October 25, 1983, and again upon the birth of her son, Lawrence Jones, on July 4, 1990. As a condition to her receipt of public assistance, Middleton assigned her right to seek and obtain child support payments from the fathers of her children to the department for the period she received public assistance.

¶3 In 1986, the department initiated a paternity suit against appellant and sought child support payments for Armed.[1] When appellant denied paternity, the domestic relations department performed HLA tests, which revealed a 99.21% probability that appellant was Armed's father. Nonetheless, appellant continued to deny paternity and several more years elapsed pending a paternity proceeding. On June 2, 1995, after nearly ten years of litigation, appellant acknowledged paternity.

¶4 On November 7, 1997, the trial court held a *de novo* hearing on the issue of child support. The department sought child support for the period from June 18, 1986, the date it filed the original support complaint, through June 5, 1992, the date Armed, at the age of eighteen, graduated from high school. The trial court found that, as his father, appellant had a duty to provide child support to Armed and then implemented the Pennsylvania Child Support Guidelines to determine the amount of support appellant should pay. The Court found appellant liable for the presumptive amount of child support under the guidelines, $27,767.21, and for the

---

1. At that time, appellant resided in York County. The department commenced the present action in Fayette County pursuant to the Uniform Reciprocal Enforcement of Support Act, 23 Pa. C.S.A. §§ 4501–4540 (repealed 1996) (subject matter of repealed sections, substantially reenacted at 23 Pa.C.S.A. §§ 7101–7802) (The Uniform Interstate Family Support Act) and §§ 8101–8415 (The Intrastate Family Support Act).

costs of paternity tests, $449.00.[2] In an order filed on December 10, 1997, the court directed appellant to pay arrearages in the amount of $390 per month. Appellant then filed this timely appeal, wherein he frames the following issues for our review:

I  Whether the Department of Welfare has standing or a right of support; Whether any right of a child to support can be given, contracted or assigned to a third party including any governmental agency; and Whether the father of a child is legally responsible to the Department of Welfare under Pennsylvania Support Law for the support of persons to whom he has no legal relationship;

II  Whether this assignment and requirement of payment of support violates the United States Constitution and/or the Pennsylvania Constitution as a taking by the government for public or private use without due process of law, just compensation and without authority of law and as to equal protection, discrimination, due process, prohibition against special laws, actions without authority of law, without police power and other constitutional safeguards and whether the same is against public policy and violates inherent rights, to compel [sic] parents from nonintact families but not from intact families to provide child support and reimbursement to the Department of Welfare for other non-related individuals; and,

III  Whether procedural due process has been violated in the manner in which this child support matter has been prosecuted in violation of separation of powers and other constitutional safeguards under the United States Constitution and/or the Pennsylvania Constitution?

Appellant's Brief, at 2.[3]

¶ 5  Our standard and scope of review in child support cases is narrow. We will not disturb a child support order absent clear and convincing evidence of an abuse of discretion. *See Kelly v. Kelly*, 430 Pa.Super. 31, 633 A.2d 218, 219 (1993). "More than mere error of judgment is required; discretion is abused only if the law is overridden or misapplied or the judgment exercised is manifestly unreasonable." *Lesko v. Lesko*, 392 Pa.Super. 240, 572 A.2d 780, 782 (1990) (citations omitted).

¶ 6  In his first claim, appellant challenges the department's standing to seek the full amount of child support owing for the years 1986 through 1992. Primarily, appellant contends that the department lacks standing to seek child support from him because it "has no [r]ight of [s]upport and [ ] is not a dependent person to whom [he] is legally liable under the [s]upport law[s]." Appellant's Brief, at 9. Additionally, appellant asserts that the department cannot establish standing based upon Middleton's assignment of

---

2. The trial court's earnings determinations were as follows:

| Year | Net Monthly Income Appellant | Middleton * | Support Obligation Per Month |
|------|------|------|------|
| 1986 | $1,915.67 | $652.14 | $335.00 (6/18–12/31) |
| 1987 | $2,513.67 | $672.13 | $391.00 |
| 1988 | $2,513.67 | $692.07 | $387.00 |
| 1989 | $2,140.48 | $713.58 | $374.00 |
| 1990 | $2,643.50 | $735.09 | $382.00 |
| 1991 | $2,792.36 | $756.59 | $404.00 |
| 1992 | $3,174.85 | $779.67 | $456.00 (1/1–5/31) |
|  |  |  | $ 76.00 (6/1–6/5) |

* The trial court initially assigned mother an income level equivalent to minimum wage and added a 3% cost of living adjustment per year.

3. Substantial defects in appellant's brief preclude effective appellate review of two of the issues he raises on appeal. In his second argument, appellant claims, *inter alia,* that the department's actions constitute a taking of property without just compensation. In his third, appellant claims that the participation of the department and the Domestic Relations Office in this action violates the doctrine of separation of powers and principles of procedural due process. Appellant has failed to support either of these arguments with discussion and citation to *relevant* legal authorities. He also fails to cite to the location in the record where he raised and preserved the third issue presented for our review. Therefore, we deem both of these claims waived. *See* Pa. R.A.P. 2119(a), (b), (c) and (e); *see also McMichael v. McMichael*, 700 A.2d 1337, 1339 n. 6 (Pa.Super.1997); *Commonwealth v. Hallock*, 722 A.2d 180 (Pa.Super.1998).

her right to seek child support payments for Armed's benefit. In the alternative, appellant argues that the department cannot rely on the assignment to establish standing because an assignment of the right to child support payments in excess of the amount of cash assistance the department actually provided to Armed is illegal.

¶ 7 Appellant's argument confuses the department's right to enforce his support obligation with the right to retain the child support payments obtained. The department's standing to enforce an unwed recipient's right to receive child support payments from a noncustodial parent derives from state statute. Custodial parents must, as a condition precedent to receipt of benefits on behalf of the family filing unit, assign to the state any right to receive child support and assist in the collection of that support. *See* 62 Pa.C.S.A. §§ 432.6(e) (repealed 1998) and 432.7 (repealed 1998) (subject matter of repealed sections substantially reenacted at 23 Pa.C.S.A. § 4374(c)); *accord* 42 U.S.C.S. §§ 602(a)(26)(A) and (B); 55 PA.CODE §§ 187.21(b) and 187.23(a). Section 4508 of the Reciprocal Enforcement of Support Act confers standing upon the department, as obligee, to seek reimbursement for support furnished to welfare recipients. *See* 23 Pa. C.S.A. § 4508 (repealed 1996) ("If a state or a political subdivision furnishes support to an individual obligee, it has the same right to initiate a proceeding ... as the individual obligee for the purpose of securing reim-

bursement for support furnished....") (subject matter of repealed section substantially reenacted at 23 Pa.C.S.A. §§ 7301 and 8301); *see also*, Pa. R.Civ.P. Rule 1910.3(3) (A support action may be brought "by a public body ... having an interest in the care, maintenance or assistance of a person to whom a duty of support is owing[.]"); *c.f.*, *Department of Public Welfare v. Joyce*, 131 Pa. Cmwlth. 621, 571 A.2d 536, 537 (1990) (finding department is "obligee" from whom prothonotary may not demand payment of fees and costs in advance in support actions, when it attempts to procure order of support for its own reimbursement).[4]

■ ¶ 8 Here, Christine Middleton received public assistance on behalf of herself and her son from 1986 through 1992, the years for which the department sought support from appellant. By operation of law, an assignment of Middleton's right to seek child support payments from Armed's father arose when she began to accept public assistance. Therefore, we conclude that the department possessed statutory authority to institute suit against appellant and secure child support payments.[5]

¶ 9 Appellant insists that Middleton's assignment of Armed's right to child support as a condition to her receipt of public assistance is invalid as a matter of law, and, therefore, the department cannot rely upon the assign-

---

4. "Obligee" is defined as:

A person to whom a duty of support is owed *or a person, including a state or political subdivision, that has commenced a proceeding for enforcement of an alleged duty of support* or for registration of a support order. It is immaterial if the person to whom a duty of support is owed is a recipient of public assistance.

23 Pa.C.S.A. § 4502 (emphasis added) (repealed 1996) (subject matter of repealed section substantially reenacted at 23 Pa.C.S.A. §§ 4302 and 7101(b)).

5. We also find that, contrary to appellant's assertions, the department is not at liberty to finance its own programs with child support payments collected on behalf of public assistance recipients. Once secured, child support payments are made directly to the department, which distributes the support collected according to the formula set forth in the statute and regulations.

Under the regulations applicable in the present case, the first $50.00 of support collected each month passes through to the family unit. *See* 62

Pa.C.S.A. § 432.7(i) (The department shall "[c]onstrue and implement this section in order to comply with Title IV–D of the Federal Social Security Act relating to child support and the establishment of paternity.") (repealed 1998) (subject matter of repealed section substantially reenacted at 23 Pa.C.S.A. § 4374(c)); *see generally* 42 U.S.C.A. §§ 602 and 657; 45 C.F.R. § 302.51. The department retains the remaining support collected, if any, as reimbursement for public assistance provided to the welfare recipient. *See generally Sanders v. Lott*, 428 Pa.Super. 119, 630 A.2d 438 (1993); *see also* 42 U.S.C.A. §§ 602 and 657; 45 C.F.R. § 302.51; *c.f.*, 62 Pa.C.S.A. 432.6(e); 55 PA.CODE § 171.21(b)(1).

If the child support collected by the department exceeds the amount of the assistance provided to the family as a whole, then the excess is returned to the family unit, should it ever stop receiving assistance. *See* 42 U.S.C.A. § 657; 45 C.F.R. § 302.51(b)(3); *c.f.*, 62 Pa.C.S.A. 432.6(e); 55 PA.CODE § 171.21(b)(1). Hence, the department may not retain and expend funds in excess of the public assistance actually provided to the family unit.

ment to establish standing. In support of his argument, appellant cites to *MacDougall v. MacDougall*, 397 Pa. 340, 342–44, 155 A.2d 358, 360 (1959). Appellant apparently wants us to extrapolate from this case the broad proposition that a mother cannot bargain away the right of her minor children to support. Appellant's Brief, at 9, 12.

█ ¶ 10 The *MacDougall* rule is much narrower than appellant suggests. The rule espoused in this case is that a mother cannot bargain away the right of her child to support *"to the relief of the father ... irrespective of the legality of the agreement."* See *Brown v. Hall*, 495 Pa. 635, 643 n. 11, 435 A.2d 859, 863 n. 11 (1981); *accord MacDougall*, 397 Pa. at 342–44, 155 A.2d at 360. In other words, the courts will not hesitate to disregard a support agreement between the parents if it operates to prejudice the welfare of the child involved. See *id.*; *Brown, supra*; *see also Borrell v. Borrell*, 346 Pa.Super. 1, 498 A.2d 1339, 1342 n. 4 (1985); *Commonwealth v. Snively*, 206 Pa.Super. 278, 212 A.2d 905, 906 (1965).

¶ 11 We find *MacDougall* inapplicable to the present case for the following reasons: First, the assignment is not an agreement between the parents of a minor child but a statutory construction, which arises by operation of law, rather than by contract. Second, the assignment does not relieve father of his support obligation. Third, the assignment is not illegal; in fact, it is specifically authorized by statute.[6] Fourth and finally, we are unconvinced that the assignment operated to the prejudice of Armed. Absent the assignment of child support payments, mother and Armed would have been without any source of income whatsoever. The state extended assistance to Armed without any guarantee that it would be able to locate the putative father, let alone secure child support payments from him. In doing so, the state provided Armed with those very necessities that the child's biological father had an absolute obligation to provide, but did not. Ap-

pellant has long neglected to support his child and instead abdicated his responsibility to the state. We can hardly conclude that Armed was prejudiced by Middleton's promise to reimburse the state for support provided.

█ ¶ 12 Importantly, appellant does not contest that he is Armed's father and owes a duty of support. He argues only that the trial court should have deviated from the support guidelines because this duty does not extend to Middleton and her two other children.[7] Once the trial court determined there was an obligation to pay support, there arose a presumption that the amount derived under the guidelines was the correct amount of support to award. See Pa. R.Civ.P.1910.16–1; *see also Sanders*, 630 A.2d at 442–43. This presumption is not rebutted by a custodial parent's receipt of public assistance. See *id.* That "father's contributions would potentially only reduce the debt owed to the state by Mother and all other fathers of her children" is irrelevant to the determination of the amount of support to award. *Id.* at 443. The trial court had no authority to reduce the amount of child support payable based upon Middleton's receipt of public assistance; thus, its refusal to deviate from the support guidelines was proper. See *id.*

¶ 13 Next, we turn to appellant's constitutional challenges. Our review is deferential: An enactment of the General Assembly enjoys a strong presumption of constitutionality. See *Commonwealth v. Barud*, 545 Pa. 297, 304, 681 A.2d 162, 165 (1996). In the area of economic and social welfare, state authorities are permitted considerable latitude, and all doubts are to be resolved in favor of sustaining the constitutionality of the legislation:

> ... [A] State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution

---

6. For reasons stated *infra,* we reject appellant's contention that because the department retains the support collected as reimbursement for cash assistance provided to Middleton and her children, this arrangement is unconstitutional.

7. This is true, and it is for this reason that the trial court calculations of payable support are based upon appellant's obligation to his child Armed and not to the entire Middleton household.

simply because the classification ... in practice ... results in some inequality. *Fritsch v. Wohlgemuth*, 19 Pa.Cmwlth. 83, 338 A.2d 706, 708 (1975).

> The touchstone of substantive due process, as with equal protection, is whether the law in question is rationally related to a legitimate state goal, or whether the state action arbitrarily works to deny an individual life, liberty, or property.

*Rosler v. Unemp. Comp. Bd. Of Review*, 116 Pa.Cmwlth. 604, 542 A.2d 624, 627 (1988) (quoting *Laudenberger v. Port Auth. Of Allegheny County*, 496 Pa. 52, 436 A.2d 147 (1981), *appeal dismissed, Bucheit v. Laudenberger*, 456 U.S. 940, 102 S.Ct. 2002, 72 L.Ed.2d 462 (1982)). "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." *Bowen v. Gilliard*, 483 U.S. 587, 602, 107 S.Ct. 3008, 3017, 97 L.Ed.2d 485, 501–02 (1987) (citations omitted); *accord Laudenberger, supra*.

¶ 14 The gravamen of appellant's constitutional claims is that, through the combined workings of the support guidelines and the welfare reimbursement rules, he is required, to the detriment of his son, to support others to whom he owes no duty. Appellant argues that the reimbursement provisions only affect families who do not reside together and therefore violates the equal protection and due process clauses of the Pennsylvania and United States Constitutions. This court seriously questions whether appellant may raise these constitutional claims when it is his child's and not his own right to these support payments which allegedly is infringed. *Cf., Bowen*, 483 U.S. at 606, 107 S.Ct. at 3020, 97 L.Ed.2d at 504 (In evaluating economic impact of assignment, it is impact on child and not entire family that is relevant.).[8]

¶ 15 In any event, appellant has failed to demonstrate that the challenged law "clearly, palpably and plainly" violates a specific mandate or prohibition of either constitution. *See Barud*, 545 Pa. at 304, 681 A.2d at 165. The sole legal authority appellant cites in support of his argument is the *Gilliard* dissent. He dismisses the reasoning set forth in the majority opinion on the grounds that the *Gilliard* majority did not consider the effects of state reimbursement requirements on noncustodial parents.

¶ 16 While appellant is correct in his observation that noncustodial parents were not a party to that action, we find his reliance on the dissent misplaced nevertheless. This court expressly adopted the reasoning set forth by the *Gilliard* majority in *Sanders* —a case, we add, which considered the affect of reimbursement provisions upon the noncustodial father and his child. *See Sanders*, 630 A.2d at 440. We concluded, as the *Gilliard* Court did, that the state's interest in funding its welfare programs is a legitimate one, and that the reimbursement provisions enacted by our legislature bear a rational relationship to that interest. Appellant does not challenge this conclusion; his complaint is that these provisions discriminate against non-intact families and operate to the detriment of himself and his child. We do not agree.

¶ 17 Initially, we find that appellant has failed to demonstrate that the challenged provisions treat custodial and noncustodial parents disparately. Each and every parent has an absolute obligation to support his or her child, *see* 23 Pa.C.S.A. § 4321(2), and the department may seek reimbursement from any parent, not just a noncustodial one, *see* 23 Pa.C.S.A. § 4508. The amount of the parent's obligation does not vary based upon the living arrangements of parent and child. Hence, there is but one class of parents, and

---

**8.** We pause to note that by private agreement dated October 23, 1986, Middleton and Armed released any claim to unpaid child support arrears in exchange for appellant's financial support of Armed while he completes college. The parties specifically provided that,

> This agreement shall not alter any rights, if any, of the [department] for any obligation, if any, due the [department] as finally settled or determined by [c]ourt [o]rder, which Christine

R. Middleton effectively and lawfully assigned to and which is due and payable to the [department] in any amount as finally determined, agreed to or settled by the [department] through [a]greement or by [c]ourt [o]rder ....

This agreement is of no moment here, where the issue is confined to the relative rights of appellant and the department, and the agreement does not release appellant from his obligation to the department *via* Middleton's assignment.

appellant's claims that the provisions discriminate against noncustodial parents must fail. *Cf., Bowen v. Commonwealth Dept. of Public Welfare*, 21 Pa.Cmwlth. 144, 343 A.2d 690, 694 (1975) (holding that a discrimination claim must fail where there is but one class of recipients established by department's regulations).

¶ 18 · In addition, we are unconvinced that the reimbursement provisions operate to the detriment of appellant's son. Armed's "right to support payments, and the child's expectations with respect to the use of such funds, are clearly subject to modification by law, be it through judicial decree, state legislation, or congressional enactment." *Gilliard*, 483 U.S. at 607, 107 S.Ct. at 3020, 97 L.Ed.2d at 505. Moreover, "the requirement that the support income be used for the 'benefit' of the child does not preclude its use for common expenses. ... [T]he custodial parent's duty to benefit the supported child is not necessarily served simply by spending more money on him [ ] than other children living in the same home." *Id.*, 483 U.S. at 600 n. 14, 107 S.Ct. at 3016 n. 14, 97 L.Ed.2d at 500 n. 14. Just as the *Gilliard* Court found that it was reasonable for Congress to presume that child support payments for a child living in an AFDC household were typically used to meet that entire household's needs, *see id.*, we likewise find that it was reasonable for the General Assembly to presume public assistance provided to any individual member of a household benefits that entire family. Although every dollar provided to the Middleton household may not have been expended on him exclusively, the public assistance furnished nonetheless directly benefited Armed in that it enabled him to reside in a home with increased stability. *See id.* (Nothing in the state support laws "requires a custodial parent to focus only on the economic interests of the child receiving support without taking into account the emotional and psychological welfare of the child"). Hence, we conclude that the legislature's decision to allow the department to retain a support award secured for the benefit of one member of the family unit as reimbursement for public assistance provided to the entire family unit is rationally based. Any perceived injustice which may arise from this scheme is for the legislature—not the judiciary—to remedy. *See Sanders*, 630 A.2d at 443 (The "intractable economic, social, and even philosophical problems presented by the public welfare assistance programs are not ... the business of lower state courts, including" the Superior Court.) (quoting *Gilliard*, 483 U.S. at 609, 107 S.Ct. at 3021, 97 L.Ed.2d at 506).

¶ 19 To summarize, we reject appellant's constitutional claims and find that the department possessed statutory authority to enforce appellant's support obligation. Furthermore, we decline to apply the principles espoused in *MacDougall* to an assignment of child support rights which arises by operation of law. The trial court properly refused to deviate from the support guidelines based upon mother's status as a welfare recipient. Accordingly, we affirm its order.

¶ 20 Order affirmed.