**Tammy M. CUTLIP, Appellee,**

v.

**Lawrence C. SHUGARS Jr., Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 12, 2002.

Filed Jan. 14, 2003.

Lawrence C. Shugars, appellant, pro se.

J. Richard Mattern, Clearfield, for appellee.

Before LALLY–GREEN, TODD, and POPOVICH, JJ.

OPINION BY LALLY–GREEN, J.:

¶ 1 Appellant, Lawrence C. Shugars Jr., appeals *pro se* from the order entered on February 1, 2002, seizing assets from Appellant's bank account in order to satisfy his child support obligations. We reverse and remand for further proceedings.

¶ 2 The factual and procedural history of the case is as follows. On September 9, 1991, Tammy Cutlip ("Mother") filed a child support petition concerning her daughter, C.C., born on December 21, 1986. Appellant petitioned for a blood test and requested a jury trial to determine the paternity of C.C. The tests determined a

99.91% probability that Appellant was indeed the father. On June 18, 1992, a hearing officer determined that Appellant should pay $25.00 per month in child support.[1] In 1995, for reasons which are not clear from the record, Appellant was incarcerated. Appellant remains incarcerated in SCI—Huntingdon.

¶ 3 On July 20, 1999, the court suspended the support order, effective August 11, 1997, because the court determined that C.C. no longer resided with Mother. The order stated that the case would be terminated "upon payment of arrearages due the Department of Public Welfare." Docket Entry 11.[2]

¶ 4 On December 19, 2001, pursuant to 23 Pa.C.S.A. 4304.1 and 4305,[3] the court issued an "Order to Freeze Assets," directing the First Commonwealth Bank to freeze up to $1,236.16 in assets held by Appellant.[4] The Domestic Relations Section (DRS) provided notice of the court's order to Appellant on December 31, 2001. On January 29, 2002, Appellant filed an "Objection to Seizure [sic] of Assets Notice." Appellant raised two objections: (1)

the bank account at issue was his prison account, which is not subject to attachment as a matter of law; and (2) there was a mistake in the amount of overdue support. With respect to this second issue, Appellant argued that the Domestic Relations Section (DRS) failed "to properly adjust [his] arrearages" to reflect the fact that he is in prison. Docket Entry 21 at 2. The DRS received Appellant's Objection on January 29, 2002.[5]

¶ 5 On February 1, 2002, the court issued an "Order to Seize Assets" pursuant to Pa.R.C.P.1910.23. The order directed the First Commonwealth Bank to seize up to $1,236.16 in assets held by Appellant. Appellant responded by filing a timely notice of appeal from this order.[6]

¶ 6 Appellant raises one issue on appeal: Does not the Office of Domestic Relations' failure to judiciously dispose of the Appellant's substantive objections to the notice of freezing/seizing of assets violate the Pa.R.C.P., Rule 1910.23(b)? Appellant's Brief at 4.

¶ 7 Appellant argues that the trial court failed to provide sufficient due process to

1. Appellant was given 10 days to file an appeal de novo from the hearing officer's recommendation. The record does not contain any such appeal.

2. The record contains no information on the circumstances or the petition (if any) giving rise to this order.

3. 23 Pa.C.S.A. § 4304.1 sets forth, inter alia, the ways in which banks and other financial institutions must cooperate with the domestic relations section in providing information about child support obligors. Section 4305(b)(10)(iii) authorizes the domestic relations section to attach and seize assets of the obligor held in financial institutions. The Rule of Civil Procedure implementing these substantive provisions is Pa.R.C.P.1910.23. See, Pa.R.C.P.1910.23—Official Comment.

4. Earlier, on November 9, 2001, the court issued an order to the State Correctional In-

stitution—Huntingdon, directing the prison to withhold $100.00 per month from Appellant's income in order to satisfy Appellant's outstanding support obligation. This order is not at issue in this appeal.

5. Appellant's Objection was filed with the trial court on April 10, 2002, long after the entry of the February 1, 2002 order at issue in this case.

6. The appeal was filed from prison by mail on February 28, 2002. On March 22, 2002, the court ordered Appellant to file a Concise Statement of Matters Complained of on Appeal under Pa.R.A.P.1925. The court responded to all four issues in an Rule 1925 opinion dated April 25, 2002.

On March 6, 2002, Appellant filed an Application for Stay/Supersedeas of the court's order. Docket Entry 19. The court did not respond to this application.

Appellant before seizing the assets in his bank account.[7] We construe this issue as whether the court followed the applicable Rules of Civil Procedure. Thus, we begin by reviewing the relevant rules.

¶ 8 Under Rule 1910.20(b)(3), "upon the obligor's failure to comply with a support order," the order may be enforced under Rule 1910.23 by "attaching and seizing assets of the obligor in financial institutions." The trial court invoked Pa.R.C.P.1920.23 in support of its order to seize Appellant's assets.[8] Rule 1910.23 provides, in relevant part, as follows:

**Rule 1910.23 Support Order. Enforcement. Attachment of Assets Held by Financial Institutions.**

(a) Upon identification of an obligor's assets held by a financial institution, the court shall, upon certification of the overdue support owed by the obligor, enter an immediate order prohibiting the release of those assets upon further order of court.... Service of the order upon the financial institution shall attach the asset up to the amount of the overdue support until further order of court.

(b) The domestic relations section shall provide written notification of the attachment to the obligor. The obligor and any joint owner of the account who has been notified by the financial institution may object to the attachment in writing or by personal appearance before the domestic relations section within 30 days after issuance of the notice. The grounds for an objection are limited to the following: (1) no overdue support exists under the support order or there is a mistake in the certified amount of overdue support; (2) there is a mistake in the identity of the obligor; or (3) the account is not subject to attachment as a matter of law.

(c) If no objection is made within 30 days after notice was issued, the court shall, upon proof that the obligor was properly served with notice of the attachment, enter an order seizing the assets up to the amount of overdue support owed. The order shall be served on the financial institution and a copy of the order provided to both parties.

Pa.R.C.P.1910.23.

¶ 9 In the instant case, there is no dispute that the court complied with Rule 1910.23(a) by initially issuing a freeze order. Similarly, there is no dispute that the DRS complied with Rule 1910.23(b) by sending notice of the freeze to Appellant. Moreover, Appellant complied with his obligation under Rule 1910.23(b) by filing written objections **with the DRS** within 30 days of receiving notice of the freeze. We note that the rule does not require objections to be filed with the Court; rather, they need only be filed with the DRS.

¶ 10 The problem arises with the fact that the Rule is silent as to what the DRS or the court should do after the DRS receives timely objections. Rule 1910.23(c) states that if the obligor does **not** object within 30 days, the court may immediately proceed to issue a seizure order. Pa. R.C.P.1910.23(c). The Rule does not explain how the DRS or the court should respond if it **does** receive timely objections. On the other hand, the Rule implies, and common sense dictates, that the court should take some action to consider and dispose of the objections before pro-

---

7. There is no dispute that the DRS has standing to enforce the support obligation. *See, Middleton/DPW v. Robinson,* 728 A.2d 368 (Pa.Super.1999).

8. Rule 1910.23 was adopted in 2000. We have not found case law interpreting this new rule.

ceeding further with a seizure order.[9] This procedure will allow the court to consider the merits of the objections at a time when it still has jurisdiction over the case.[10]

¶ 11 In the instant case, the record reflects that the trial court acted as if no objections had been timely filed. The court did not consider Appellant's objections, and did not issue any order disposing of the objections. Nothing in the Court's Rule 1925 Opinion suggests that the court first considered Appellant's objections before entering the seizure order. Rather, approximately 31 days after the DRS notified Appellant of the freeze, the court issued a seizure order without further comment. This procedure is not contemplated by Rule 1910.23. Accordingly, we reverse the seizure order and remand for the trial court to consider the merits of Appellant's timely-filed objections. We express no opinion on the procedures that the court and/or DRS may wish to take upon remand, or on the merits of Appellant's objections.

¶ 12 Order reversed. Remanded for further proceedings. Jurisdiction relinquished.

---

9. *See,* Pa.R.C.P. 128(b) (when interpreting the Supreme Court's intention in promulgating a Rule of Civil Procedure, courts should presume that the Supreme Court intends the entire rule to be effective and certain). We also note the "fundamental maxim of statutory construction, 'expresio unius est exclusio alterius,' [which] stands for the principle that the mention of one thing in a statute implies the exclusion of others not expressed." *Commonwealth v. Spotz,* 552 Pa. 499, 716 A.2d 580, 590 (1998). This principle may be applied to the instant case. If the Rule authorizes an immediate seizure order when no timely objections are filed, it follows that the trial court may not issue an immediate seizure order when timely objections are filed. Rather, the court should first dispose of the objections.

10. In the instant case, the court addressed the merits of Appellant's claims for the first time in a Rule 1925 opinion, after the court was divested of jurisdiction to act.