J-A12018-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | |
|---|---|
| EDWARD RUCH AND DORIS JEANNE O'HANDLY RUCH, | : IN THE SUPERIOR COURT OF<br>:       PENNSYLVANIA<br>: |
|       Appellees | : |
| | : |
|       v. | : |
| | : |
| VERNE WILLIAMS, II AND ANGELA M. WILLIAMS, | : |
| | : |
|       Appellants | :  No. 1052 MDA 2014 |

Appeal from the Judgment entered June 19, 2014,
Court of Common Pleas, Dauphin County,
Civil Division at No. 2010-CV15485-EJ

BEFORE:  BOWES, DONOHUE and ALLEN, JJ.

MEMORANDUM BY DONOHUE, J.:　　　　　　　　　　**FILED MAY 05, 2015**

Appellants, Verne and Angela Williams (together, the "Williams"), appeal from the order entered on June 19, 2014, following the trial court's entry of an order requiring the Williams to, inter alia, relocate a fence constructed on the property of Appellees, Edward and Doris Ruch (together, the "Ruches").  For the reasons that follow, we affirm in part and reverse in part.

After a bench trial commencing on January 23, 2014 and concluding on April 1, 2014, the trial court decided the case in favor of the Ruches by order dated April 30, 2014.  In its subsequent written opinion in support of its order, the trial court set forth the following findings of fact relevant to the determination of this appeal:

In 1976, Edward Ruch [] purchased the property located at 106 Nagle Street. At that time a hedge existed between the properties of 106 and 108 Nagle Street. The hedge was a privet hedge and approximately five feet tall and three feet wide. All parties believed that the property line was somewhere within this hedge. Also, on the 108 side of the hedge there was an old fence. Mr. Ruch believed that at least a portion of the hedge was on his property and he would care for the hedge by routinely trimming his side of the hedge and the top, and removing dead branches from within the hedge. It is believed that the prior owner of 106 Nagle Street also cared for the hedge, as Mr. Ruch purchased hedge clippers from the prior owner when he purchased the property. Mr. Ruch's children and wife would also help maintain the hedge by caring for the portion of the hedge that was located on the property at 106 Nagle Street. This care for the hedge had continued up until the hedge was removed by [the Williams], and all parties are in agreement that Mr. Ruch would care for the hedge.

Around 1987, a dog owned by the individual residing at 108 Nagle Street got through the hedge and bit [the Ruches'] son. To keep this from reoccurring, Mr. Ruch trimmed the hedge back and placed a new, green painted four-feet fence within the hedge. As Mr. Williams [] was removing the hedge in March of 2010, he discovered a chain-link fence within the hedge. Mrs. Williams [] discovered the fence approximately six months prior when her dog tried to get through the fence.

Verne Williams first saw the properties of 108 and 106 Nagle Street in 2001, when he moved into the property at 110 Nagle Street with his wife, Angela Williams. Mrs. Williams was familiar with the properties all her life, but only obtained title to the property at 108 Nagle Street in 2004. Prior to [the Williams] residing at that property, James Miller resided there until 1972. At the time Mr. Miller resided at the property, he recalled a hedge as the

boundary between 108 and 106 Nagle Street and a wire fence on the 106 side of the properties. Mr. Miller described the fence as a "wire-mesh fence," located down around the roots of the hedge on the 106 side of the roots. When he moved from the property in 1972, the property became a rental property. In 1988, Mr. Miller obtained the property by deed from his father, but continued to use it as a rental.

Mr. Williams claimed that he spoke with Mr. Ruch many times about the hedge and about replacing the hedge with a fence, to be placed where the roots of the hedge were located. Mr. Ruch denied ever having an agreement, and Mr. Williams admitted that the two never discussed any details. Mr. Williams stated that he had to rely on the fence as a property line when he removed the hedge. The wire fence within the hedge was apparently attached to [the Ruches] shed. When [the Williams] removed the fence, they cut the wire fence at the shed line. As [the Williams'] were removing the hedge, they decided that the property line must be along the root base of the hedge, but apparently placed the new fence directly where the old fence was located.

In March of 2010, Mr. Ruch returned to his property to find pieces of the hedge in a pickup truck and a new fence on his property, erected by [the Williams]. [The Ruches'] backyard should be approximately 12 ½ feet wide, however, the fence reduces the width of their property by about two feet. In addition to the fence encroachment, [the Williams] have nailed things to [the Ruches'] roof and shed wall. [The Ruches] shortly thereafter commenced this action to eject [the Williams] from their property.

[The Ruches'] expert, Keith Heigel, is a professional land surveyor with Light-Heigel & Associates, Inc. Mr. Heigel has been a surveyor since 1983 and is licensed in the state of Pennsylvania. Mr. Heigel testified that there were encroachments from the 108 Nagle Street property (owned by [the Williams])

onto the 106 Nagle Street property (owned by [the Ruches]). Mr. Heigel further testified that that the fence located between the two properties is encroaching on [the Ruches'] property.

[The Williams] attempted to offer to the court the opinion of Bruce Yager. Mr. Yager was unable to produce his license number for the court on January 23, 2014. The court scheduled the conclusion of the non-jury trial for April 1, 2014 at 1:30 p.m. At the conclusion of the April 1, 2014 non-jury trial, [the Williams] were unable to produce the license number of Mr. Yager. Numbers that were given to [the Williams'] counsel in regards to Mr. Yager's license did not match up with any of the records that the Department of State has for his registration. [The Ruches'] counsel spoke to somebody who works at the Bureau of Professional Occupational Affairs. This individual confirmed that she never sent an E-mail confirming Mr. Yager's license number. This E-mail had stated that there was a mix-up with numbers and that Mr. Yager was actually licensed. It turns out this E-mail was completely false and was never sent. This individual also confirmed to [the Ruches] counsel that Mr. Yager is not licensed and that they have no knowledge of him being a licensed surveyor. Furthermore, Mr. Yager was not in court on April 1, 2014 due to "allegedly" being in the hospital.

Trial Court Opinion, 10/8/2014, at 1-5.

In its April 30, 2014 order, the trial court, inter alia, ruled that the property line between 106 and 108 Nagle Street is defined as set forth in the Light-Heigel & Associates, Inc. survey, and requires the Williams (1) to remove the fence between the two properties, (2) remove the encroachments to the Ruches' roof and shed, and (3) to be responsible for

- 4 -

the creation of a new survey prepared by Light-Heigel & Associates, Inc. and recorded with the Dauphin County Recorder of Deeds.

On appeal,[1] the Williams raise four issues for our consideration and review:

> 1. Did the [trial court] err in refusing to permit Bruce Yager to testify as an expert witness [?]
>
> 2. Did the [trial court] err in locating the property line between the lands of [the Ruches and the Williams], in accordance with the Light-Heigel survey, east of the line of the fence and hedge, where both deeds of the parties failed to have a metes and bounds description other than to call the other property as an adjoiner?
>
> 3. Did the [trial court] err in failing to find that the old fence which existed between the properties of [the Ruches and the Williams] for over twenty-one years and which was replaced by [the Williams] was a consentable boundary line between the lands of [the Ruches and the Williams]?
>
> 4. Did the [trial court] err in ordering [the Williams] to make changes to roof encroachments which have existed for more than twenty-one years, and which

---

[1] On appeal, the Ruches contend that this appeal is untimely because the Williams' Notice of Appeal was not filed within 30 days of the entry of the trial court's April 30, 2014 order. We disagree. The April 30, 2014 order set forth the trial court's verdict following trial, and thus post-trial motions were required before judgment could be entered resulting in an appealable order. *See, e.g.*, *Chalkey v. Roush*, 805 A.2d 491, 496 (Pa. 2002) ("a trial court's order at the conclusion of a trial, whether the action is one at law or in equity, simply cannot become final for purposes of filing an appeal until the court decides any timely post-trial motions"). In this case, on May 9, 2014, the Williams timely filed a Motion for Post-Trial Relief, which the trial court denied by order dated May 21, 2014. The Williams thereafter praeciped for the entry of judgment on June 19, 2014 and filed a timely Notice of Appeal therefrom.

> > were not made the subject of the request for relief by [the Ruches] in the pleadings filed in this action[?]

Williams' Brief at 2-3.

For their first issue on appeal, the Williams argue that the trial court erred in "failing to permit Bruce Yager ("Yager") to testify as an expert witness based upon the qualifications submitted into the record." Williams' Brief at 6. Whether to qualify a person to testify as an expert witness rests within the sound discretion of the trial court, and this Court will not reverse absent an abuse of that discretion. ***Miller v. Brass Rail Tavern, Inc.***, 664 A.2d 525, 528 (Pa. 1995). A person need not necessarily be licensed to testify as an expert witness, and also need not "be possessed of all of the knowledge in a given field." ***Id.*** To qualify as an expert witness in a given field, "the test to be applied when qualifying an expert witness is whether the witness has any reasonable pretension to specialized knowledge on the subject under investigation." ***Freed v. Geisinger Med. Ctr.***, 971 A.2d 1202, 1206 (Pa. 2009), *on reargument*, 5 A.3d 212 (Pa. 2010).

Based upon our review of the certified record in this case, we must agree with the Ruches that the Williams have not preserved this issue for appellate review, since counsel for the Williams never asserted any objection to the trial court's preclusion of Yager's testimony on the grounds now claimed. During the first day of trial on January 23, 2014, Yager testified as to his qualifications generally but could not provide his surveyor's license

number. The trial court, recognizing that trial would not be concluded that day, proposed that Yager's testimony be continued so that he could obtain his license information. N.T., 1/23/2014, at 74-75. The trial court then stated, "Once that is resolved, I don't think I have any issue with him testifying as an expert." *Id.* at 75. Counsel for the Williams did not object to this approach, and instead agreed to it and called his next witness. *Id.* at 75-76.

On March 31, 2014, the day before the scheduled resumption of trial on April 1, 2014, counsel for the Williams filed a motion for continuance because "no satisfactory evidence of his [Yager's] registration has been forthcoming," and because Yager was apparently hospitalized. Motion for Continuance, 3/31/2014, ¶¶ 5-6. At the beginning of trial the next day, the trial court reviewed the issues relating to Yager's registration number and the fraudulent facsimile. N.T., 4/1/2014, at 3-6. Counsel for the Williams represented that "I'm not sure whether that [the license information] will ever be forthcoming." *Id.* The trial court denied the motion for continuance,[2] noting that despite the more than two-month time period between the first and second days of trial, the issues regarding Yager's license still had not been resolved. *Id.* at 6 ("this matter should have been handled probably in the first two weeks afterwards").

---

[2] The Williams have not appealed this ruling.

Counsel for the Williams commented that "Well, we've been trying to get it, Your Honor," *id.*, but did not object either to the denial of the motion for continuance or the refusal to permit Yager to testify in the absence of providing his license number. Instead, counsel for the Ruches called the next witness to testify, without further comment from either counsel. As a result, counsel for the Williams never raised before the trial court the issue now raised on appeal, namely whether Yager should have been permitted to testify despite his failure to produce his license number. The Williams' first issue on appeal is thus waived. Pa.R.A.P. 302(a); **Commonwealth v. Strunk**, 953 A.2d 577, 580 (Pa. Super. 2008) ("[O]ne must object to errors, improprieties or irregularities at the earliest possible stage of the criminal or civil adjudicatory process to afford the jurist hearing the case the first occasion to remedy the wrong and possibly avoid an unnecessary appeal to complain of the matter.") (quoting **Commonwealth v. English**, 667 A.2d 1123, 1126 (Pa. Super. 1995), *affirmed*, 699 A.2d 710 (Pa. 1997)).

For their second issue on appeal, the Williams contend that the trial court erred in finding that the property line was in the location set forth in the Light-Heigel & Associates, Inc. survey, because "both deeds of the parties failed to have a metes and bounds description other than to call the other property as an adjoiner." Williams' Brief at 2. Again, however, we are constrained to conclude that this issue has not been preserved for appellate review. Rule 2119 of the Pennsylvania Rules of Appellate Procedure requires

an appellant to set forth in the argument section of the appellate brief "discussion and citation to authorities as are deemed pertinent." Pa.R.A.P. 2009(a). Where an appellant fails to do so, this Court has routinely found the issue to be waived. *See, e.g.*, *Connor v. Crozer Keystone Health System*, 832 A.2d 1112, 1118 (Pa. Super. 2003); *Middleton/DPW v. Robinson*, 728 A.2d 368, 371 n.3 (Pa. Super. 1999).

The argument section of the Williams' appellate brief contains no discussion or citation to authorities relating to the contention that the trial court erred with respect to its rulings related to the testimony of Keith Heigel and/or the conclusions of the Light-Heigel & Associates, Inc. survey. The brief does reference a variation between the Ruches' "own deed and their survey," Williams' Brief at 9, but offers no explanation regarding either the nature of this alleged variation or its relevance in the present dispute. Instead, the argument section of the Williams' appellate brief is primarily limited to a discussion of the Williams' contention, pursuant to *Zeglin v. Gahagen*, 812 A.2d 558 (Pa. 2002), that the property line here should have been determined based the doctrine of consentable line (to be discussed hereinbelow in connection with the Williams' third issue on appeal).

For their third issue on appeal, the Williams claim that the trial court should have held "that the property line in issue was defined by the hedge and fence for such a long time and recognized by the respective owners as the line dividing their properties that the hedge with fence became the

property line." Williams' Brief at 6. Our standard and scope of review in an appeal from a non-jury verdict is as follows:

> Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law.

*J.J. DeLuca Co. v. Toll Naval Associates*, 56 A.3d 402, 410 (Pa. Super. 2012) (quoting *Rissi v. Cappella*, 918 A.2d 131, 136 (Pa. Super. 2007); *Corbin v. Cowan*, 716 A.2d 614, 617 (Pa. Super. 1998).

The Williams contend that the trial court failed to recognize that the conduct of the parties over many years had established the boundary line between the two properties. The doctrine of consentable lines has its doctrinal roots in adverse possession theory, as "occupancy with open manifestations of ownership throughout the statutory period will generally satisfy the traditional elements of adverse possession." *Zeglin*, 812 A.2d at 562. In *Moore v. Moore*, 921 A.2d 1 (Pa. Super. 2007), this Court described the doctrine of consentable lines in detail:

> "The establishment of a boundary line by acquiescence for the statutory period of twenty-one years has long been recognized in Pennsylvania" to quiet title and discourage vexatious litigation.

*Zeglin v. Gahagen*, 571 Pa. 321, 812 A.2d 558, 561 (2002); *see also Corbin [v. Cowan]*, 716 A.2d [614,] 617 [(Pa. Super. 1998)]. Based upon a rule of repose sometimes known as the doctrine of consentable line, the existence of such a boundary may be proved either by dispute and compromise between the parties or recognition and acquiescence by one party of the right and title of the other. *See Corbin*, 716 A.2d at 617…

"Acquiescence," in the context of a dispute over real property, "denotes passive conduct on the part of the lawful owner consisting of failure on his part to assert his paramount rights or interests against the hostile claims of the adverse user." *Zeglin*, 812 A.2d at 562 n. 5 (quoting Edward G. Mascolo, A Primer On Adverse Possession, 66 Conn. B.J. 303, 312–13 (Aug. 1992)). A determination of consentable line by acquiescence requires a finding 1) that each party has claimed the land on his side of the line as his own and 2) that he or she has occupied the land on his side of the line for a continuous period of 21 years. *See Zeglin*, 812 A.2d at 561. Significantly, because the finding of a consentable line depends upon possession rather than ownership, proof of the passage of sufficient time may be shown by tacking the current claimant's tenancy to that of his predecessor. *See id.* at 566. To do so, however, the claimant must show "sufficient and credible proof of delivery of possession of land not within (but contiguous to) property described by deed of conveyance, which was previously claimed and occupied by the grantor and is taken by the grantee as successor in such interest." *Id.* "[W]hen a consentable line is established, the land behind such a line becomes the property of each neighbor regardless of what the deed specifies. In essence, each neighbor gains marketable title to that land behind the line, some of which may not have been theirs under their deeds." *Soderberg v. Weisel*, 455 Pa. Super. 158, 687 A.2d 839, 843 (1997) (internal citation omitted).

- 11 -

*Id.* at 5.

In considering whether the trial court should have applied the doctrine of consentable lines to establish the boundary line here, we must first determine where the Williams claim the boundary line is. In their appellate brief, the Williams alternatively point to the hedge between the properties and to the fence within the hedge. Williams' Brief at 6, 10. The hedge cannot be the boundary, as it was three feet wide and thus cannot serve as a precise property "line" at all, particularly where the present dispute involves a claimed intrusion of only about two feet onto the Ruches' property. Instead, the Williams' Answer and New Matter and Counterclaim makes clear that the Williams' actual contention is that the fence inside the hedge should demarcate the boundary, as they allege that "there had been an existing wire fence between the two properties which had been in existence for more than forty (40) years separating the lands of Plaintiffs and Defendants." Answer and New Matter and Counterclaim, 9/12/2011, ¶ 7. Moreover, while the trial court found that there were two fences inside or near the hedge (a white wire mesh fence at the base of the roots of the hedge, and a green four-feet fence installed by Mr. Ruch in 1987 after a dog bit his son), the Williams consentable line argument focuses on the white wire mesh fence inside the hedge. We note that on the second day of trial, the Williams introduced into evidence a portion of a white wire mesh fence,

which the Williams' current tenant testified was retrieved from inside the hedge. N.T., 4/1/2014, at 7-16, Exhibit 16.

Accordingly, we proceed to consider the Williams' contention that the white wire mesh fence within the hedge marked the consentable line of demarcation between 106 and 108 Nagle Street. As set forth in **Moore**, the existence of a consentable line may be proved either by (1) dispute and compromise between the parties, or (2) recognition and acquiescence by one party of the right and title of the other. **Moore**, 921 A.2d at 5. With respect to dispute and compromise, there is no evidence in the record to support the existence of a compromise of a dispute between the owners or possessors of 106 and 108 Nagle Street for 21 years regarding the boundary line. While not referencing any dispute, Mr. Williams did testify that he and Mr. Ruch had agreed to remove the hedge and put up a new fence running at the roots of the hedge. N.T., 1/23/2014, at 100. Mr. Ruch did not so testify, however, and his reaction when discovering the new fence (he was "livid" and immediately called his attorney, *id.* at 36-37) strongly suggests that he did not believe there was a firm agreement to replace the hedge with a new fence. The trial court, as the finder of fact, noted the conflicting testimony and concluded that no firm agreement had been reached. Trial Court Opinion, 10/8/2014, at 3.

With regard to the second alternative, recognition and acquiescence by one party of the right and title of the other, there is again insufficient

evidence to establish a consentable line. As rehearsed above, acquiescence requires a finding (1) that each party has claimed the land on his side of the line as his own and (2) that he or she has occupied the land on his side of the line for a continuous period of 21 years. *Moore*, 921 A.2d at 5. For each of the landowners to "claim the land on his side of the line as his own," they must first acknowledge (implicitly or explicitly) the existence of the specific boundary during the period of adverse possession and then act in accordance with this acknowledgement (by occupying "the land on his side of the line for a continuous period of 21 years"). The certified record, however, contains insufficient evidence to satisfy this requirements for either the Ruches or the Williams. While Mr. Ruch testified that he was aware that there was a white mesh fence inside the hedge, he did not testify that he ever believed that this fence constituted the boundary between the two properties. To the contrary, Mr. Ruch testified that he always understood the boundary to be approximately two feet from the edge of his sidewalk. N.T., 1/23/2014, at 29. While Mr. Ruch maintained his side of the hedge, Trial Court Opinion, 10/8/2014, at 2, this did not constitute any proof that Mr. Ruch acknowledged that the white mesh fence inside the hedge marked the property line with the Williams' property.

With respect to the Williams, Mr. Williams testified that he was not even aware of the existence of the white mesh fence until he removed the hedge in 2010. Because he did not know of its existence until 2010, he

could not possibly have "claim[ed] the land on his side of the line as his own" and occupied it. Moreover, because the Williams did not purchase 108 Nagle until 2001, to establish the 21-year period of adverse possession, it would be necessary to "tack" their possession with that of the predecessor owner. A predecessor owner, James Miller, testified that he was aware of the existence of a white mesh fence within the hedge, but he did not testify that he ever considered this fence to constitute the boundary line between the two properties. N.T., 1/23/2014, at 78-80.

For their fourth issue on appeal, the Williams argue that the trial court erred in ordering them to make changes to their porch and roof overhang, since the Ruches made no claim for such damages in their pleadings. Williams' Brief at 6. The Williams properly preserved this issue for appellate review. Motion for Post-Trial Relief, 5/12/2014, ¶ 4.

As a general matter, there must be consistency between the allegations in a plaintiff's complaint and the proof presented at trial in support of claims for relief. *Holt's Cigar Co. v. 222 Liberty Associates*, 591 A.2d 743, 750 (Pa. Super. 1991). The required consistency between the *allegata* and the *probata* "derives from the belief that absent prior notice of what an opponent intends to prove at trial, a party may be surprised at trial and thereby deprived of the opportunity to prepare an adequate defense." *Id.* (citing *Freer v. Parker*, 192 A.2d 348, 349 (Pa. 1963) and *Computer Print Systems, Inc. v. Lewis*, 422 A.2d 148, 152 (Pa. Super.

- 15 -

1980)). Rule 1021 of the Pennsylvania Rules of Civil Procedure, requiring that "[a]ny pleading demanding relief shall specify the relief sought," codifies this policy against prejudicial surprise. *Id.*

The Ruches' amended complaint sets forth causes of action for ejectment and trespass. All of the allegations in connection with both counts relate solely and specifically to the Williams' removal of the hedge and placement of a new fence on their property. With respect to the ejectment count, the prayer for relief requests "an order directing Defendants to remove the fence." Amended Complaint, 3/18/2011, ¶¶ 7-8. Similarly, the trespass count demands money damages resulting from the need to employ a professional surveyor and legal counsel "as a result of placing the fence on Plaintiffs' property." *Id.* ¶¶ 11-12. The Ruches' pleadings (including their subsequently filed answer to the Williams' new matter and counterclaim), do not allege any encroachment related to the porch or roof overhang or request any relief in connection therewith.

In fact, it would appear that the first reference to the porch and roof overhang in the certified record on appeal was during Mr. Ruch's testimony at trial on January 23, 2014, in response to a question from his counsel regarding any other encroachments by the Williams. N.T., 1/23/2014, at 40-41. The only other testimony regarding the porch and roof overhang was a brief exchange on April 1, 2014, when Mr. Ruch indicated that he built the roof in question in 1979. N.T., 4/1/2014, at 32-33.

For these reasons, we agree with the Williams that the trial court lacked any basis for awarding the Ruches relief related to the porch and roof overhang. In this regard, we note that the trial court denied the Williams' post-trial motions without comment on this issue and did not offer any explanation for its decision in its subsequent written opinion in support of its order awarding relief to the Ruches. As a result, we must reverse paragraph 3 of the trial court's April 30, 2014 order.

Judgment affirmed in part and reversed in part as set forth herein. Jurisdiction relinquished.


Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/5/2015