J. A11006/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| D.Y.C. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| J.S., | : | No. 1462 EDA 2014 |
| | : | |
| Appellant | : | |

Appeal from the Order Entered April 4, 2014,
in the Court of Common Pleas of Montgomery County
Civil Division at No. 04-09396, PACMS 00773690

BEFORE:  FORD ELLIOTT, P.J.E., OLSON AND WECHT, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:                **FILED JULY 09, 2015**

Appellant, J.S. ("Husband"), appeals from the order seizing assets from his bank account in order to satisfy his child support obligation.  We affirm.

The case has an extensive nine-year history that began when appellee, D.Y.C. ("Wife"), filed a complaint for divorce in 2004.  We adopt the trial court's recitation of the procedural history.

> On March 13, 2006, [Husband] and [Wife] reached an agreement on the amount of child support to be paid by [Husband].  In an Order dated March 13, 2006, the Honorable Toby Dickman ordered that the amount of arrears related to child support be addressed in equitable distribution.  On March 23, 2011, [Husband] and [Wife] attended a hearing before an equitable distribution Master which resulted in a Report and Recommendation.  Thereafter, [Husband] filed a Motion to remand the case back to the Master.  On April 12, 2011, the

parties entered into an agreed support Order, wherein [Husband] pays $391 per month basic child support, and $50 toward arrears, for a total of $441 per month (Agreed Support Order"). On August 22, 2011, the Honorable Carolyn Carluccio entered an Agreed Order granting [Husband]'s Motion to remand the equitable distribution claim to the Master and containing a provision that "[t]he Master's decision is binding upon the parties and shall be issued with a 236 Notice entered as a Judgment Lien." On December 17, 2012, the parties again appeared before the equitable distribution Master. On February 6, 2013, a Master's Report, Decision, and Judgment upon Equitable Distribution, Alimony, Counsel Fees and Costs (hereinafter "2013 Master's Report") was entered which recommended that judgment be entered in favor of [Wife] and against [Husband] in the amount of $30,382.50, recommended charging [Husband]'s account in the support action in the amount of $7,852.23 in arrearages, and further recommended denying [Husband]'s claim for attorney's fees and costs. Thereafter, on February 8, 2013, [Husband] filed timely exceptions to the Master's Report dated February 6, 2013.

On June 14, 2013, the Honorable Garrett Page issued an Order ruling that the parties' August 22, 2011 Agreed Order legally binds the parties to the 2013 Master's Report dated February 6, 2013 and that said Agreed Order was not modifiable by the Court. Subsequently on July 25, 2013, the Honorable Garrett Page issued a Divorce Decree and Order that divorced the parties from the bonds of matrimony and further ordered that judgment be entered in favor of [Wife] and against [Husband] in the amount of $30,382.50 and [Husband]'s account in the support action be charged in the amount of $7,852.23 in arrears. On August 19, 2013, [Husband] filed a fast track appeal pursuant to Pa.R.C.P. 904(f) to the July 25, 2013 Divorce Decree and Order. That matter is still pending on appeal with the Superior Court.

On January 17, 2014, pursuant to the Pennsylvania Consolidated Statutes Title 23 Section 4304.1 and 4305 and Pa.R.C.P. 1910.23(a), the Honorable Kelly Wall, issued an "Order to Freeze Assets," directing Wells Fargo Bank, N.A. to freeze assets belonging to [Husband] up to $7,852.23, the outstanding balance of [Husband]'s support arrears. On January 27, 2014, the Domestic Relations Office provided notice of the Order to [Husband]. On February 7, 2014, [Husband] filed an Objection to Order to Freeze Assets. In [Husband]'s six (6) paragraph Objection to Order to Freeze Assets, [Husband] stated that the January 17, 2014 Order froze funds in his Wells Fargo Bank account in the amount of $7,852.23, and argued that because he filed a timely appeal to the July 25, 2013 Decree and Order that consolidated arrears with funds awarded in equitable distribution, "this Court lacks any and all jurisdiction to freeze any funds of [Husband]." On February 9, 2014, [Wife] filed a Motion to Overrule the Objection to Order to Freeze Assets arguing that [Husband]'s objection cannot form the basis of a valid objection to the Order to Freeze Assets. This Court received both petitions and scheduled oral argument on [Husband]'s objection, and [Wife]'s Motion to overrule said objection. On March 28, 2014, both parties appeared and presented argument to the Court.

[Husband] argued that because the July 25, 2013 Divorce Decree and Order directed that [Husband]'s account in the support action be charged in the amount of $7,852.23 and [Husband] appealed that Order to the Superior Court, DRO had no jurisdiction to freeze [Husband]'s assets for that amount of money. [Husband] argued that even though the Agreed Support Order was being enforced and [Husband] reportedly had been paying $50 per month toward the arrears amount, the total arrears amount (i.e. the $7,852.23) is pending before the Superior Court so to freeze assets based on that amount was error. Furthermore, [Husband] argued that if [Wife] wanted to continue the enforcement of the July 25, 2013 Decree and Order,

- 3 -

then [Wife]'s remedy would have been to try to quash the appeal.

In response, [Wife] argued that under Pa.R.A.P. § 1701(b)(2), this Court has continuing jurisdiction to enforce Orders unless [Husband] filed and requested a supersedeas from the court pursuant to Pa.R.A.P. § 1731(b). In addition, [Wife] argued that even if [Husband] had requested a supersedeas, it should have been denied pursuant to the August 22, 2011 Order, which states that [Husband] waived his right to stay enforcement during the appeal process.

This Court deliberated on [Husband]'s objection to the court's authority to issue the January 17, 2014 Order enforcing the July 25, 2013 Decree and Order during the pendency of appeal. Thereafter, on April 1, 2014, this Court issued an Order overruling [Husband]'s objection and granting [Wife]'s Motion to overrule said objection. On May 5, 2014, [Husband] filed a timely Notice of Appeal to the Superior Court.

Trial court opinion, 6/23/14 at 1-5 (references to footnotes omitted).

Husband presents a single issue for this court's consideration:

Did the trial court abuse its discretion when it permitted the seizure of [Husband]'s bank account to satisfy child support arrears when [Husband] had been making $50.00 month payments on the arrears pursuant to a 2011 Agreed Support Order?

Husband's brief at 3.

In reviewing Husband's claim, we note that our standard of review in matters of support will allow us to reverse the trial court only when there has been an abuse of that court's discretion. **Ney v. Ney**, 917 A.2d 863, 866 (Pa.Super. 2007).

The domestic relations section has the authority to "[i]ssue orders in cases where there is a support arrearage to secure assets to satisfy current support obligation and the arrearage by: . . . [a]ttaching and seizing assets of the obligor held in financial institutions." 23 Pa.C.S.A. § 4305(b)(10)(iii). The Rules of Civil Procedure implementing this provision are set forth in Pa.R.C.P., Rule 1910.20(b)(3), 42 Pa.C.S.A. and Rule 1910.23. Rule 1910.20 provides that "[u]pon the obligor's failure to comply with a support order, the order may be enforced . . . pursuant to Rule 1910.23, attaching and seizing assets of the obligor held in financial institutions." Rule 1910.20(b)(3). Rule 1910.23 provides, in relevant part as follows:

> (a) Upon identification of an obligor's assets held by a financial institution, the court shall, ***upon certification of the overdue support owed by the obligor***, enter an immediate order prohibiting the release of those assets until further order of court. . . . Service of the order on the financial institution shall attach the asset up to the amount of the overdue support until further order of court.

> (b) The domestic relations section shall provide written notification of the attachment to the obligor. The obligor and any joint owner of the account who has been notified by the financial institution may object to the attachment in writing or by personal appearance before the domestic relations section within 30 days after issuance of the notice. **The grounds for an objection are limited to the following: (1) no overdue support exists under the support order or there is a mistake in the certified amount of overdue support; (2) there is a mistake in the identity of**

> **the obligor; or (3) the account is not subject to attachment as a matter of law.**
>
> (c)  If no objection is made within 30 days after notice was issued, the court shall, upon proof that obligor was properly served with notice of the attachment, enter an order seizing the assets up to the amount of overdue support owed.  The order shall be served on the financial institution and a copy of the order provided to both parties.

Pa.R.C.P. 1910.23(a)-(c) (emphasis added).[1]  "[T]he Rule implies, and common sense dictates, that the court should take some action to consider and dispose of the objections before proceeding further with a seizure order."  **Cutlip v. Shugars**, 815 A.2d 1060, 1062-1063 (Pa.Super. 2003).

Instantly, the premise of Husband's argument is simple.  Husband argues he was in full compliance with the April 12, 2011 support order and

---

[1] The support guidelines differentiate between "overdue support" and "past due support" as follows:

> "Overdue support," the amount of delinquent support equal to or greater than one month's support obligation which accrues after entry or modification of a support order as the result of obligor's nonpayment of that order.
>
> "Past due support," the amount of support which accrues prior to entry or modification of a support order as the result of retroactivity of that order. When nonpayment of the order causes overdue support to accrue, any and all amounts of past due support owing under the order shall convert immediately to overdue support and remain as such until paid in full.

Pa.R.C.P. 1910.1.

there was no basis to seize his assets. However, we note that in his objection to the order freezing his assets, Husband claimed the trial court lacked jurisdiction to freeze any funds because Husband filed an appeal of the trial court's July 25, 2013 order.[2]

In response, Wife contends Husband's argument is factually inaccurate and his statement that he was at all times in compliance with the child support order is disingenuous at best and completely belied by his history of support payment maintained by domestic relations. (Wlife's brief at 7.)[3]

The March 28, 2014 notes of testimony indicate counsel for Husband stated: "It is our contention that since the order is on appeal, that there is no standing, so to speak by DRO to take an order to freeze the assets. And Common Pleas and DRO has [sic] no jurisdiction at this time to address that particular amount of money." (Notes of testimony, 3/28/14 at 3.) The trial court, in its June 23, 2014 opinion, stated, "the objections hearing focused

---

[2] We note that the appeal Husband claimed divested the trial court of jurisdiction was handed down as an opinion filed on September 2, 2014. **Chen v. Saidi**, 100 A.3d 587 (Pa.Super. 2014). In the appeal, there is no discussion regarding the sum of $7,852.23 that was added to Husband's child support arrears.

[3] Wife has supplemented her brief with copies of PACSES case financial summaries which appear to support her position. (**See** R16b-22b.) However, we are precluded from considering copies of these records. **See Kessler v. Broder**, 851 A.2d 944 (Pa.Super. 2004), **appeal denied**, 868 A.2d 1201, (Pa. 2005) (on appeal, inclusion in the reproduced record is not an acceptable substitute for the original certified record);**Warfield v. Warfield**, 815 A.2d 1073, 1074 n.1 (Pa.Super. 2003) (this court must rely solely on the contents of the certified record).

on [Husband's] objection as articulated, namely, that the trial court was divested of jurisdiction and lacked authority to enforce the arrears amount stated in the July 25, 2013 Decree and Order." (Trial court opinion, 6/23/14 at 6.) The trial court went on to state:

> During the objections hearing, [Husband] did comment that he was paying $50 per month toward arrears, but argued this relative to the fact that he had no issue with Agreed Support Order being enforced, rather [Husband] took issue with the total arrears amount frozen (i.e., $7,852.23) because [Husband] believed that the accuracy of that arrears amount would be addressed on appeal to the Superior Court. ***As [Husband] failed to raise the issue in his Objection to Order to Freeze Assets and during the hearing, and also failed to submit any evidence to the court on the issue, this court had no reason to assume that the January 17, 2013 Freeze Asset Order that specifically states it was issued pursuant to Pa.R.C.P. 1910.23 did not comply with 1910.23(a), where a representative from DRO certified that [Husband] owed overdue support prior to the court issuing the freeze order.***

***Id.*** at 6-7 (emphasis added) (reference to notes of testimony omitted).

We have reviewed the certified record. Husband was identified by the tactical enforcement unit of MCDRS as owing overdue support arrears. As stated in Rule 1910.23 there are three limited grounds for an objection; namely, no overdue support exists or there is a mistake in the certified amount of overdue support; there is a mistake in the identity of the obligor; or the account is not subject to attachment as a matter of law. Instantly, Husband did not pursue any of the permitted grounds for objection.

Based on the above, we affirm the order of the trial court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/9/2015